IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| vs. | Case No. 15-cv-40010-SMY |
| JOSHUA L. PARKHILL, | |
| Defendant. | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on Defendant Joshua L. Parkhill's Motion to Suppress (Doc. 22). The Court held a hearing on the motion on July 22 and 28, 2015. For the following reasons and those stated on the record, the motion is **GRANTED**.

**Background**

The parties stipulated to the relevant facts during the hearing. On December 2, 2013, a tipster informed Illinois State Police Inspector Wes Harbison that Defendant was making daily trips to St. Louis to purchase heroin and that he would likely make such a trip the following day. After an inquiry into Defendant's record, Harbison discovered Defendant had a suspended driver's license and an outstanding failure-to-appear warrant out of Franklin County, Illinois for a driving offense.

On the following day, December 3, 2013, law enforcement officers waited outside Defendant's residence. At 11:00 a.m., the officers observed Defendant leaving the residence driving his grandfather's 2002 Ford F-150. The officers also observed Defendant's grandfather seated in the passenger seat, but were unable to determine if there were passengers in the back seat because of the tinted windows. The officers followed Defendant to Caseyville, Illinois, at

which time they lost sight of the vehicle when it exited the interstate at approximately 12:30 to 1:00 p.m.

Later that day at 3:30 p.m., Inspector Harbison spotted the vehicle traveling eastbound on Interstate 64 at or near the Lebanon exit. At 4:30 p.m. Harbison conducted "an investigative traffic stop" on the south bound off ramp of Interstate 57 at Exit 71 in Benton, Illinois. At the time of the stop, Defendant's grandfather was driving, Defendant's grandmother was in the passenger seat and Defendant was laying down in the backseat. Prior to initiating the stop, officers knew that an elderly white man was driving the vehicle and they did not observe Defendant in the vehicle. After the stop, officers found Defendant lying in the backseat and arrested him at which time he admitted to possessing 25 buttons of heroin, 1 suboxone pill, a hypodermic syringe, a spoon, and 3 Q-tips. Approximately 24 minutes after the initial stop, the officers arrived at the Franklin County Sheriff's Department with Defendant at which time he admitted to using, buying, and selling heroin.

Defendant now seeks to suppress the evidence and statements obtained by law enforcement arguing that the stop, seizure, and search were in violation of the Fourth Amendment. Specifically, Defendant argues that the tip and officers' personal observation did not provide reasonable suspicion sufficient to justify a *Terry* stop and the fruits of the illegal stop and seizure, including his statements/admissions and the seized evidence, must be suppressed.

The Government counters that Defendant's arrest warrant precludes any argument that the officers lacked probable cause or reasonable suspicion, that the officers had reasonable suspicion to conduct the traffic stop because Defendant's observed conduct conformed to the tipster's information, and that the warrant constituted an intervening circumstance. At the suppression hearing, the Government clarified its arguments as follows (1) there was reasonable

suspicion that Defendant Parkhill was present in the vehicle to arrest him on the warrant; (2) Defendant Parkhill did not have a reasonable expectation of privacy under the Fourth Amendment because of the arrest warrant and his status as a passenger; and (3) if the Court finds the initial stop in violation of the Fourth Amendment, the confession made by the Defendant at the Sheriff's Department is admissible because the search warrant was an intervening circumstance.

### Analysis

Brief investigatory stops are permissible "when a law enforcement officer has 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" *Navarette v. California*, 134 S. Ct. 1683, 1687 (2014) (quoting *United States v. Cortez*, 449 U.S. 411, 417-18 (1982)). "The 'reasonable suspicion' necessary to justify such a stop 'is dependent upon both the content of information possessed by police and its degree of reliability.'" *Navarette*, 134 S. Ct. at 1687 (quoting *Alabama v. White*, 496 U.S. 325, 330 (1990)). The court must look to the totality of the circumstances. *Navarette*, 134 S. Ct. at 1687. The inquiry requires more that "a mere 'hunch'" but "'considerably less than proof of wrongdoing by a preponderance of the evidence.'" *Id*. at 1687.

An anonymous tip alone is seldom sufficient to constitute reasonable suspicion. *Florida v. J.L.*, 529 U.S. 266, 270 (2000). "[H]owever, there are situations in which an anonymous tip, suitably corroborated, exhibits 'sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop.'" *Id*. (quoting *Alabama v. White*, 496 U.S 325, 329 (1990)).

Defendant cites to *Navarette* in support of his argument that the tip received by Officer Harbison on December 2, 2013 did not provide reasonable suspicion. In *Navarette*, officers stopped a truck identified by a 911 caller as the truck that had run her off the road. *Id*. at 1687.

3

The officers smelled marijuana as they approached the vehicle, and a search revealed 30 pounds of marijuana. *Id*. The officers arrested the driver and passenger who moved to suppress the evidence arguing the officers lacked reasonable suspicion. *Id*. The Court found the anonymous tip sufficiently reliable because the caller claimed eyewitness knowledge of the dangerous driving. *Id*. at 1689. The Court further found the tipster reliable because the report was contemporaneous with the reported incident and the tipster used the 911 system which has safeguards to deter false reports. *Id*.

In *Navarette,* the Supreme Court pointed to two cases as guides in determining whether an anonymous tip provides reasonable suspicion. In *Alabama v. White*, reasonable suspicion was present where an anonymous tipster told police a woman was transporting cocaine. 496 U.S. 325, 327 (1990). The tipster indicated the woman would be driving a brown Plymouth station wagon with a broken right tail light from a particular apartment building to a particular motel. *Id*. After corroborating these details, officers stopped the woman and found the cocaine. *Id*. at 332. Because of the corroborated details, this tip was found to be sufficiently reliable to support reasonable suspicion of criminal activity. *Id*. Specifically, the tipster accurately predicted the driver's behavior indicating the tipster's information was reliable. *Id*. The Court further indicated officers could rely on the truthfulness of the tipster's claims because some of her claims had already proved truthful. *Id*. at 331.

In *Florida v. J.L.*, reasonable suspicion was not present where an anonymous tipster told officers a young black male wearing a plaid shirt at a bus stop was carrying a gun. 529 U.S. 266, 268 (2000). That Court found it relevant that "[t]he tipster did not explain how he knew about the gun, []suggest that he had any special familiarity with the young man's affairs," or "include

4

[any] predictions of future behavior that could be corroborated to assess his credibility." *Navarette*, 134 S. Ct. at 1688 (citing *J.L.*, 529 U.S. at 271-72).

  Here, although the tip was not an "anonymous tip" as officer Harbison was aware of the tipster's identity, the Supreme Court's analysis in *Navarette* applies. However, the Court finds that the tip in the instant case did not provide reasonable suspicion that Defendant was in the vehicle at the time the officers made the stop. The only prediction of Defendant's future behavior that the tipster provided was that at some point the next day, Defendant would get into a vehicle and drive. The tipster did not identify the vehicle Defendant would use or that there would be passengers accompanying him. More importantly, while the tipster specifically identified Defendant's destination as St. Louis, Missouri, the officers last observed him sometime between 12:30 and 1:00 p.m. when he exited Westbound Interstate 64 in Caseyville, Illinois - twelve miles from St. Louis, Missouri. The fact that officers observed Defendant driving the vehicle prior to exiting at Caseyville fails to provide reasonable suspicion that Defendant was in the vehicle at the time it was stopped since the officers could not see Defendant in the vehicle and observed that an elderly man was driving. At that point, the officers merely had a hunch that he may be in the vehicle, out of their sight. However, it would have been just as reasonable to assume that Defendant was dropped off in the Caseyville area and did not make the return trip. As the Supreme Court explained in *Navarette*, the reasonable suspicion inquiry requires more than a hunch.

  Next, the Government argues Defendant did not have a reasonable expectation of privacy under the Fourth Amendment due to the arrest warrant and his status as a passenger. However, because a passenger in a vehicle is "seized" in the course of a traffic stop, the passenger has Fourth Amendment standing to challenge the legality of the traffic stop. *Brendlin v. California*,

551 U.S. 249, 259 (2007). The fact that the passenger has a warrant does not change the passenger's standing to challenge an illegal seizure when the purpose of the stop was to seize the suspect. *See United States v. Hudson* 405 F.3d 425, 440 (6th Cir. 2005).

In *Steagald v. United States*, the Supreme Court held "that absent exigent circumstances or consent, a search warrant is required to enter and search a third person's home for a fugitive named in an arrest warrant." *United States v. Patino*, 830 F.2d 1413 (7th Cir. 1987) (citing *Steagald v. United States*, 451 U.S. 204 (1981). The Seventh Circuit has noted that "if the arrestee himself lacks standing to challenge an illegal search, then this would 'render the *Steagald* rule a virtual nullity.'" *United States v. Jackson*, 576 F.3d 465, 467 n.1 (7th Cir. 2009). "[T]he prevailing view appears to be that a suspect retains a sufficient expectation of privacy to challenge a search where the police lack a reasonable belief that the person to be arrested may be found in the placed to be searched." *Id*. Notwithstanding the Government's argument to the contrary, this Court has found no authority limiting the application of *Steagald* to searches of a third person's home.

That a passenger with an arrest warrant has Fourth Amendment standing is also supported by the Sixth Circuit's opinion in *United States v. Hudson*, 405 F.3d 425, 438 (6th Cir. 2005) and the Seventh Circuit's opinion in *United States v. Green*, 111 F.3d 515, 523 (7th Cir. 1997). In *Hudson*, crack cocaine found on the defendant passenger who had an arrest warrant was suppressible because the officers' investigative stop was not supported by reasonable suspicion. The Seventh Circuit's opinion in *Green* indicates that when the stop is for the very purpose of arresting the person, a passenger has standing to challenge the stop. Specifically, the Seventh Circuit explained:

6

> It is only in the unusual case where the police, *after* a questionable stop, discovers that an occupant is wanted on an arrest warrant that the intervening circumstances exception will apply.

*Green*, 111 F.3d at 523. Thus, where the police discover the arrest warrant *before* a questionable stop, the intervening circumstances exception would not apply and the occupant would have Fourth Amendment standing to challenge the stop.

Here, neither Defendant's status as a vehicle passenger or the arrest warrant deprives him of Fourth Amendment standing to challenge the stop. To the extent the Government asserts that some combination of the two deprive Defendant of standing, it has not directed this court to any authority to support such an assertion.

Having found the investigatory stop in this case unlawful, the Court must determine whether the Defendant is entitled to have the evidence obtained as a result of the stop suppressed. "[N]ot . . . all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police." *Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963). "Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'" *Id*. at 488 (quoting Maguire, Evidence of Guilt, 221 (1959)). The three factors "for determining whether the causal chain has been sufficiently attenuated to dissipate the taint of the illegal conduct" are: "(1) the time elapsed between the illegality and the acquisition of the evidence; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the official misconduct." *United States v. Green*, 111 F.3d at 521 (citing *Brown v. Illinois*, 422 U.S. 590, 603-04 (1975). "In the final analysis, however, the question is still whether the evidence came from 'the exploitation of that illegality or instead by means

sufficiently distinguishable to be purged of the primary taint.'" *Green*, 111 F.3d at 521 (quoting *Wong Sun*, 371 U.S. at 488).

Some courts, including the Seventh Circuit, have found that an arrest pursuant to an outstanding warrant discovered ***after*** an unconstitutional stop is an intervening circumstance sufficient to remove the taint of an initial unlawful stop. *See United States v. Johnson*, 383 F.3d 538, 540 (7th Cir. 2004) (finding a warrant an intervening circumstance where, after unlawfully stopping a vehicle, the officer recognized the driver as an individual he knew to have an outstanding warrant); *Green*, 111 F.3d at 521 (finding a warrant an intervening circumstance where, after stopping the vehicle without reasonable suspicion, officers discovered the passenger had an outstanding arrest warrant); *see also Cox v. Maryland*, 916 A.2d 311 (Md. 2007). However, the Seventh Circuit's opinions indicate that "when the police make an illegal stop for the very purpose of arresting the person stopped, they are thereby exploiting the illegal stop in a manner prohibited by the Fourth Amendment and the evidence obtained in a pat-down of the arrested suspect or in a search incident to the arrest must be suppressed." *Hudson*, 405 F.3d at 440.

In *Hudson*, the defendant had an outstanding arrest warrant for aggravated robbery. 405 F.3d at 428. An anonymous tipster told law enforcement that a woman, suspected by officers to be defendant's girlfriend, would arrive at work on September 14, 2001, at 3:00 p.m. and would be driving a red or maroon Ford Taurus. *Id*. In an attempt to corroborate the anonymous tip, law enforcement contacted the girlfriend's boss who confirmed the girlfriend's work schedule and the make and model of the girlfriend's vehicle. *Id*. Officers then waited in the girlfriend's work parking lot and observed a red or maroon Ford Taurus enter the lot at approximately 3:00 p.m. *Id*. at 429. Officers removed the woman and two black males, one of which was later identified

as the defendant, from the vehicle. *Id*. An officer found baggies of what she believed to be crack cocaine while patting down the defendant. *Id*. Upon questioning, the defendant admitted the substance was crack cocaine. *Id*.

The defendant moved to suppress the evidence arguing that officers lacked reasonable suspicion to stop and frisk him in the parking lot. *Id*. The court relied on the foregoing information, with the exception of discrediting the officer's assertion that the tipster said defendant would be in the vehicle, to conclude officers had reasonable suspicion. *Id*. at 433. The appellate court, however, found the district court erred in denying the motion to suppress. *Id*. Specifically, the court found it relevant that the officer's suspicion that the defendant was the woman's girlfriend was not sufficient to conclude that they would be traveling together at that particular time. *Id*. The Court noted that had the officers identified the defendant *before* approaching the vehicle – "for example, by reference to a photograph of [the defendant], or a composite drawing – they would have reasonable suspicion to seize the car and its occupants." *Id*. at 434. The officers, however, "had no more than a hunch that [the defendant] would be accompanying [his girlfriend] to work on the day in question and no more than a hunch that one of the passengers in [the girlfriend's] car was [the defendant]." *Id*.

As explained above, the officers here did not have reasonable suspicion to believe Defendant was in the vehicle prior to initiating contact. Unlike in *Green* and *Johnson*, the officers in this case knew prior to initiating the stop that Defendant had an arrest warrant and they undisputedly made the stop for the purpose of arresting Defendant. As such, the warrant was not an intervening circumstance sufficient to remove the taint of the initial unlawful stop. As such, any statements or evidence obtained at the initial stop must be suppressed. Further, the time lapse of approximately 24 minutes between the initial stop and the statements obtained at

9

the Sheriff's Department is not sufficient to remove the taint of the initial unlawful stop. Accordingly any statements obtained from the Defendant at the Sheriff's Department also constitute "fruit of the poisonous tree" and must be suppressed.

For the foregoing reasons, Defendant's Motion to Suppress (Doc. 22) is **GRANTED**. The evidence, including all drugs and statements, obtained at the scene of the stop is **SUPPRESSED**. Further, the evidence, including all statements, obtained at the Franklin County Sheriff's Department is **SUPPRESSED.**

**IT IS SO ORDERED.**

**DATED:** July 31, 2015

s/ Staci M. Yandle
**STACI M. YANDLE**
**DISTRICT JUDGE**
